CARPARTS DISTRIBUTION CENTER, INC., et al., Plaintiffs–Appellants,

v.

AUTOMOTIVE WHOLESALER'S ASSOCIATION OF NEW ENGLAND, INC., et al., Defendants–Appellees.

No. 93–1954.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1994.

Decided Oct. 12, 1994.

James P. Reidy, with whom James Q. Shirley and Sheehan Phinney Bass & Green Professional Ass'n were on brief, for appellants.

Samuel A. Marcosson, Atty., with whom James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel and Vincent J. Blackwood, Asst. Gen. Counsel were on brief for the E.E.O.C., amicus curiae.

William Garza, Cary LaCheen, Herbert Semmel, Thomas Kendricks on brief for American Civil Liberties Union, Gay and Lesbian Advocates and Defenders and Gay Men's Health Crisis, amici curiae.

James H. Schulte, with whom Burns, Bryant, Hinchey, Cox & Schulte, P.A. was on brief, for appellees.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiffs-appellants Carparts Distribution Center, Inc., Daniel W. Dirsh, and Shirley M. Senter, appeal from the district court's order dismissing their complaint for illegal discrimination based on disability under state and federal laws. The court granted judgment under Fed.R.Civ.P. 12(b)(6) in favor of defendants.

## I.

### STANDARD OF REVIEW

Our review of dismissal under Fed. R.Civ.P. 12(b)(6) is plenary. *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991). We accept as true all of the allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Id.*

## II.

### BACKGROUND

In May 1986, Plaintiff Ronald J. Senter ("Senter") was diagnosed as infected with Human Immunodeficiency Virus ("HIV positive"). In March 1991, he was diagnosed as suffering from Acquired Immune Deficiency Syndrome ("AIDS"). He died on January 17, 1993.

Senter was the sole shareholder, president, chief executive director, and an employee of Carparts Distribution Center, Inc. ("Carparts"), an automotive parts wholesale distributor incorporated in New Hampshire.

Since 1977, Carparts has been a participant in a self-funded medical reimbursement plan known as Automotive Wholesalers Association of New England Health Benefit Plan ("the Plan") offered by the defendants in this case, Automotive Wholesalers Association of New England, Inc. ("AWANE") and its administering trust, Automotive Wholesalers Association of New England, Inc. Insurance Plan ("AWANE Plan"). Senter was enrolled in the Plan since 1977. In October 1990, AWANE Plan informed members of AWANE, including Carparts, of its intention to amend the Plan in order to limit benefits for AIDS-related illnesses to $25,000, effective January 1, 1991. Otherwise, lifetime benefits under the Plan were, and are, afforded in the amount of $1 million per eligible plan member.

On a number of occasions during and after 1989, Senter had several serious illnesses, many of which were HIV or AIDS related. Senter directly submitted claims for payment of his medical treatment and medications to AWANE and the AWANE Plan until spring or summer of 1991, when Carparts submitted the claims on Senter's behalf because he became too sick or matters were too complicated for him to do so.

Senter and Carparts ("plaintiffs" or "appellants") alleged,[1] that the Trustees of the Plan were aware of Senter's condition at the time the amendments to the plan were adopted. Plaintiffs claim that the cap on AIDS-related illnesses was instituted by defendants with knowledge that Senter was diagnosed HIV positive, suffering from AIDS, and subject to AIDS-related medical expenses and that the lifetime cap on AIDS related expenses was instituted in response to Senter's illness and related claims that he had filed during the previous several months. According to plaintiffs, after Senter reached the lifetime cap on AIDS related illnesses, defendants breached their contractual obligation to provide, at a minimum, medical coverage to Senter for non-AIDS related treatments, by failing, neglecting or refusing to make payments for non-AIDS related matters in a complete or consistent manner.

Plaintiffs brought this action alleging that the lifetime cap on health benefits for individuals with AIDS, instituted by defendants, represented illegal discrimination on the basis of a disability. Such a discriminatory provision allegedly rendered Carparts responsible for payments to healthcare providers on Senter's behalf and effectively put

---

1. Following Senter's death, Shirley M. Senter and Daniel W. Dirsh were appointed co-executors for his estate. On April 1, 1993, the district court allowed the substitution of the co-executors for Senter as plaintiffs in this action.

Carparts out of compliance with anti-discrimination laws, subjecting Carparts to potential liability under N.H.Rev.Stat.Ann. § 354–A:1 ("Section 354–A:1"), a state anti-discrimination law, and the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12101, *et seq.*

The district court dismissed all of plaintiffs' claims on July 19, 1993. This appeal followed.

## III.

### DISCUSSION

#### A. Notice of Proposed Dismissal

■ Plaintiffs first contend that the district court erred in dismissing their complaint without affording them notice of the court's intended dismissal. We agree.

Plaintiffs commenced this action in the state courts of New Hampshire ten days before the ADA became effective. They asserted claims under state law only. The defendants removed the case to federal court claiming that the issues raised were governed and preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

At a pretrial conference on April 15, 1993, the defendants indicated their intention to move to dismiss the pendent claims, and the plaintiffs moved to amend their complaint to assert claims under the ADA. The plaintiffs' motion was granted and they amended their complaint to include, among others, claims alleging violations of Title I and Title III of the ADA. 42 U.S.C. §§ 12112(a), 12182(a). The defendants filed an objection to the amendment and the district court treated the defendants' objection as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The court dismissed plaintiffs claims, holding that neither Title I nor Title III of the ADA applied to this case because neither defendant, AWANE or AWANE Plan, was an "employer" with respect to plaintiffs as required by Title I, and that neither defendant was a "public accommodation" as required by Title III.

Where no motion to dismiss has been filed, "a district court may, in appropriate circumstances, note the inadequacy of the complaint and, on its own initiative, dismiss the complaint. Yet a court may not do so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issue." *Literature, Inc. v. Quinn,* 482 F.2d 372, 374 (1st Cir.1973) (internal citations omitted); *see also Pavilonis v. King,* 626 F.2d 1075, 1078 & n. 6 (1st Cir.), *cert. denied,* 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980).

Although AWANE filed an objection to plaintiffs' motion to amend the complaint, and plaintiffs filed a response to AWANE's objection, neither filing addressed the substantive issues regarding Title I and Title III of the ADA on which the district court based its dismissal order. The court also failed to give plaintiffs any notice of its proposed dismissal, or any opportunity to respond to the perceived shortcomings in their complaint regarding their claims under Title I and Title III prior to the court's order dismissing the case pursuant to Fed.R.Civ.P. 12(b)(6). The court's failure to give such notice alone justifies reversal of this case. *See Literature,* 482 F.2d at 374. We also find, however, that the court's dismissal was erroneous as a matter of law. *See id.* The district court erred by interpreting Title I and Title III of the ADA to have excessively limited applications. Questions regarding the proper interpretation of the ADA are sure to arise on remand. Therefore, we feel that timely guidance is appropriate.

#### B. Title I of the ADA

■ Plaintiffs contend that the district court erred in finding that defendants were not "covered entities" under Title I of the ADA.

Title I of the ADA, entitled "Employment" provides:

No covered entity shall discriminate against a qualified individual with a disability [2] because of the disability of such indi-

---

**2.** For purposes of this appeal, we assume that Senter is a "qualified individual with a disabili-

ty." We make no determination as to whether defendants' cap on benefits in the present case

vidual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

"Covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2).

■ As the district court noted, this provision "makes it unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to, among other things, fringe benefits, available by virtue of employment, whether or not administered by the covered entity," *see* 29 C.F.R. § 1630.4(f), and "[h]ealth insurance such as that provided by the defendants is considered a fringe benefit." *Carparts Distribution Ctr. v. Automotive Wholesaler's Ass'n,* 826 F.Supp. 583, 585 (D.N.H.1993). The district court found, however, that because neither defendant was an employer of Senter, neither entity qualified as a "covered entity" as defined by the ADA and therefore neither was subject to liability under Title I of the ADA. We believe that the district court erred by interpreting Title I of the ADA to permit suits only against employers who discriminate with respect to the terms and conditions of employment of their own employees.

In making our determination we look for guidance to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and cases interpreting that statute. There is no significant difference between the definition of the term "employer" in the two statutes. *Compare* 42 U.S.C. § 2000e(b)

(Title VII) *with* 42 U.S.C. § 12111(5)(A) (ADA).[3] The Interpretive Guidance on Title I of the ADA, published by the Equal Employment Opportunity Commission ("EEOC"), establishes that the term "employer" is "to be given the same meaning under the ADA that [it is] given under Title VII."[4] 56 Fed.Reg. 35,740 (1991) (to be codified at 29 C.F.R. § 1630, App.) (Interpretive Guidance on § 1630.2(a)-(f)). *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (EEOC's interpretive guidelines "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (internal quotations and citation omitted). Additionally, Title I of the ADA provides that the "powers, remedies and procedures" of Title VII shall apply to claims of discrimination under Title I of the ADA. 42 U.S.C. § 12117(a).

The issue before us is not whether defendants were employers of Senter within the common sense of the word, but whether they can be considered "employers" for purposes of Title I of the ADA and therefore subject to liability for discriminatorily denying employment benefits to Senter. If under any legal theory defendants could be considered "employers" for purposes of Title I, then plaintiffs should be given an opportunity to amend their complaint to allege the facts establishing the application of that theory to the present case. Plaintiffs have argued, and we agree, that defendants could be considered Senter's "employers," and therefore may be subject to liability under Title I, under any one of at least three theories.

constitutes "discrimination" based on a disability.

**3.** Title VII provides:
   The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ... except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C. § 2000e(b).
   The term "employer" is defined in the ADA as:
   A person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person.

42 U.S.C. § 12111(5)(A).

**4.** The EEOC is the agency entrusted by Congress to administer and enforce the employment provisions of the ADA. 42 U.S.C. §§ 12116–17.

First, defendants would be "employers" if they functioned as Senter's "employer" with respect to his employee health care coverage, that is, if they exercised control over an important aspect of his employment. *See Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982), *vacated and rem'd on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), *reinstated and modified on other grounds,* 735 F.2d 23 (2d Cir.1984), *cert. denied,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984) (interpreting the term "employer" under Title VII) ("term 'employer,' . . . is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law.") (internal quotation and citations omitted); *Barone v. Hackett,* 602 F.Supp. 481, 483 (D.R.I.1984) (court found director of State agency that administered disability benefits for State employees liable under Title VII even though agency did not employ the plaintiffs, stating "Title VII liability is not limited to the entity which issues pay checks to the employee"); *Baranek v. Kelly,* 630 F.Supp. 1107, 1113 (D.Mass.1986) (state home care agency that had "the 'means and authority' to control discriminatory employment practices" of regional employers was an "employer" under Title VII because it "exercise[d] significant control over an employment situation").

■ If AWANE and AWANE Plan exist solely for the purpose of enabling entities such as Carparts to delegate their responsibility to provide health insurance for their employees, they are so intertwined with those entities that they must be deemed an "employer" for purposes of Title I of the ADA. *See Spirt,* 691 F.2d at 1063 (finding that an annuity association and an equities fund "which exist solely for the purpose of enabling universities to delegate their responsibility to provide retirement benefits for their employees, are so closely intertwined with those universities . . . that they must be deemed an 'employer' for purposes of Title VII"). Relevant to this inquiry is whether defendants had the authority to determine the level of benefits that would be provided to Carparts' employees and whether alternative health plans were available to employees through their employment with Carparts. If defendants had the authority to determine the level of benefits, they would be acting as an employer who exercises control over this aspect of the employment relationship.[5] Also relevant to this determination is whether Carparts shares in the administrative responsibilities that result from its employees' participation in AWANE and AWANE Plan. *See id.* Such sharing of responsibilities would tend to suggest that Carparts and defendants are so intertwined as to be acting together as an "employer" with respect to health care benefits. Only if the litigation is allowed to proceed can plaintiffs develop a record to answer these questions. For purposes of Fed.R.Civ.P. 12(b)(6), the possibility of a claim is enough to defeat dismissal.

Second, even if the defendants did not have authority to determine the level of benefits, and even if Carparts retained the right to control the manner in which the Plan administered these benefits, defendants would still be rendered "employers" of Senter if defendants are "agents" of a "covered entity,"[6] who act on behalf of the entity in the matter of providing and administering employee health benefits.[7] Just as "delegation of responsibility for employee benefits cannot insulate a discriminatory [retirement benefits] plan from attack under Title VII," *Spirt,* 691 F.2d at 1063, neither can it insu-

---

5. In contrast, insurance companies which merely sell a product to an employer but do not exercise control over the level of benefits provided to employees could not be deemed "employers" under this rationale. Where alternative health plans are available, it could not be said that defendants controlled this aspect of the employment relationship and therefore, they would not be deemed "employers" under this rationale.

6. The district court found that Carparts is a "covered entity."

7. Like Title VII, Title I of the ADA applies to "any agent" of a "covered employer." 42 U.S.C. § 12111(5)(A) (ADA); *Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 718 n. 33, 98 S.Ct. 1370, 1380 n. 33, 55 L.Ed.2d 657 (1978) (Title VII).

late a discriminatory health benefits plan under Title I of the ADA. *See id.* (recognizing that "exempting plans not actually administered by an employer would seriously impair the effectiveness of Title VII").

■ Third, under § 102(a) of the ADA, an employer may not discriminate against a "qualified individual with a disability ... in regard to" specified enumerated aspects of employment. 42 U.S.C. § 12112(a). A number of cases, although not in this circuit, have interpreted analogous provisions of Title VII to apply to actions taken by a defendant against a plaintiff who is not technically an employee of that employer. For example, in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341 (D.C.Cir.1973), the court applied Title VII to a hospital which refused to assign a private male nurse to female patients even though the nurse was technically not an employee of the hospital but was an employee of a particular patient. We do not want to be understood as holding at this time that there is automatic coverage wherever one who is an employer of a requisite number of persons takes some action that affects the employee of another entity; a great deal may depend on circumstances. At the same time, we think it premature to rule out the possibility that when additional facts are developed, a claim under Title I analogous to that in *Sibley* might be made out. *See also Christopher v. Stouder Memorial Hospital,* 936 F.2d 870, 875 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991) (interpreting Title VII, court stated that "a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities") (internal quotations and citations omitted); *Doe on Behalf of Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 422 (7th Cir. 1986) (argument that plaintiff is not an employee of defendant employer is not dispositive under Title VII because "[t]here are no indications that [language proscribing discrimination by an employer against] 'any in-dividual' should be read to mean only an employee of an employer").

Plaintiffs alleged that defendants were "covered entities" for purposes of the ADA. Because the district court prematurely dismissed plaintiffs' complaint without affording them an opportunity to address the issues upon which the district court relied for its dismissal, the record is not sufficiently complete for us to determine whether defendants were Senter's employer for purposes of Title I. On remand, plaintiffs should be given an opportunity to address this issue so that the district court can make a determination as to defendants' Title I status.[8]

## C. Title III of the ADA

■ Title III of the ADA provides:

(a). **General Rule.** No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Prohibited discrimination under Title III includes the denial, on the basis of disability, of the opportunity to benefit from the goods, services, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b); 28 C.F.R. § 36.202.

The district court interpreted the term "public accommodation" as "being limited to actual physical structures with definite physical boundaries which a person physically enters for the purpose of utilizing the facilities or obtaining services therein." Because the court found that neither of the defendants possessed those characteristics, it dismissed Senter's Title III claim. Plaintiffs contend that the district court erred in finding that Title III of the ADA did not apply to defendants because they were not places of "public accommodation" within the meaning of the Act.

---

**8.** We recognize defendants' claim that a number of the factual allegations advanced in the briefs supporting the appeal are not alleged in the complaint. Our view, however, is that in the present procedural circumstances the opportunity should have been given to flesh out the complaint with more detailed allegations. If on remand the plaintiffs are unwilling or unable to do so, that will be a quite different matter.

Whether establishments of "public accommodation" are limited to actual physical structures is a question of first impression in this Circuit. For the following reasons we find that they are not so limited and remand to the district court to allow plaintiffs the opportunity to adduce further evidence supporting their view that the defendants are places of "public accommodation" within the meaning of Title III of the ADA.

We begin our analysis by looking at the language of the statute. *Sierra Club v. Larson*, 2 F.3d 462, 467 (1993). The definition of "public accommodation" states that "[t]he following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—" and then provides an illustrative list which includes a "travel service," a "shoe repair service," an "office of an accountant, or lawyer," an "insurance office," a "professional office of a healthcare provider," and "other service establishment[s]". 42 U.S.C. § 12181(7)(F).[9] The plain meaning of the terms do not require "public accommodations" to have physical structures for persons to enter. Even if the meaning of "public accommodation" is not plain, it is, at worst, ambiguous. This ambiguity, considered together with agency regulations and public policy concerns, persuades us that the phrase is not limited to actual physical structures.

By including "travel service" among the list of services considered "public accommodations," Congress clearly contemplated that "service establishments" include providers of services which do not require a person to physically enter an actual physical structure. Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services. Likewise, one can easily imagine the existence of other service establishments conducting business by mail and phone without providing facilities for their customers to enter in order to utilize their services. It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA,

but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result.

Our interpretation is also consistent with the legislative history of the ADA. The purpose of the ADA is to "invoke the sweep of Congressional authority ... in order to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b). The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The purpose of Title III of the ADA, is "to bring individuals with disabilities into the economic and social mainstream of American life ... in a clear, balanced, and reasonable manner." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382. In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989).

Beyond our threshold determination, we must tread with care. Some of the critical language of Title III is both general and ambiguous—for example, a key provision concerns the denial based on a disability "of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). As a matter of bare language, one could spend some time arguing about whether this is intended merely to provide access to whatever product or service the subject entity may offer, or is intended in addition to shape and control which products and services may be offered. Indeed, there may be areas in which a sharp distinction between these two concepts is illusory.

One who simply reads the Committee Report describing the operations of Title III could easily come away with the impression

---

9. The defendants are private entities that operate a self-insured plan. They have not disputed that   their operation affects commerce.

that it is primarily concerned with access in the sense of either physical access to a place of public accommodation or something analogous, such as access provided through telephone lines, messengers or some other medium. At the same time, there is nothing in that history that explicitly precludes an extension of the statute to the substance of what is being offered. Suppose, for example, a company that makes and distributes tools provides easy access to its retail outlets for persons with every kind of disability, but declines to make even minor adjustments in the design of the tools to make them usable by persons with only quite limited disabilities.

The statute's treatment of insurance is a good example of these ambiguities. On the one hand, the ADA carves out a safe harbor of sorts for anyone who is "an insurer, hospital, or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations...." 42 U.S.C. § 12201(c)(1). *See also id.* at (c)(2), (3). One might initially suppose that this is because Title III would otherwise cover the substance of the insurance plans. However, there is some indication in the legislative history that the industry received this exemption not because its policies would otherwise be substantively regulated under Title III, but because "there is some uncertainty over the possible interpretations of the language contained in titles I, II and III as it applies to insurance...." *See* S.Rep. No. 116, 101 Cong., 1st Sess. at 84 (1989).

We think that at this stage it is unwise to go beyond the *possibility* that the plaintiff may be able to develop some kind of claim under Title III even though this may be a less promising vehicle in the present case

than Title I. Not only the facts but, as we have already noted, even the factual allegations are quite sparse. In addition, because of our resolution of the Title I claims, this case must be remanded and is subject to further proceedings regardless of whether Title III remains in the case. While it is tempting to seek to provide further guidance, the nature of the record and the way the issues are addressed in the appellate briefs make it imprudent to do so.

Neither Title III nor its implementing regulations make any mention of physical boundaries or physical entry. Many goods and services are sold over the telephone or by mail with customers never physically entering the premises of a commercial entity to purchase the goods or services. To exclude this broad category of businesses from the reach of Title III and limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public.

## IV.

### MISCELLANEOUS

Plaintiffs also alleged a violation of N.H.Rev.Stat.Ann. § 354–A:1, referred to as the "Law Against Discrimination," and of the Civil Rights Act of 1965, 42 U.S.C. § 1985(3).[10] Plaintiffs claimed in the district court that Section 354–A serves as an enforcement vehicle for the ADA and for that reason should not be preempted by ERISA, 29 U.S.C. § 1144. Because the district court found that the ADA did not apply to defendants, it reasoned that no disruption in the

---

**10.** Plaintiffs claimed that Senter, being afflicted with AIDS, was a member of a discrete and insular minority deserving of protected class status under 42 U.S.C. § 1985(3). Plaintiffs' Section 1985 claim alleged that defendants conspired to discriminate against Senter through the institution of a lifetime cap on AIDS-related medical benefits.

The district court noted that under section 1985(3) "[t]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" and that

appellants "must identify a source of congressional power to reach the private conspiracy alleged...." *Carparts Distribution Ctr.*, 826 F.Supp. at 587 (internal quotations and citations omitted).

Because the district court ruled that defendants were not protected by either the employment provisions or the public accommodation provisions of the ADA, it further found that appellants failed to identify a source of congressional power to reach the private conspiracy they alleged and therefore, dismissed their complaint.

enforcement of the ADA would result by holding that Section 354–A:1 is preempted. The court then found Section 354–A:1 preempted by ERISA with respect to plaintiffs' cause of action.

The district court's decision to dismiss these claims was based primarily on its finding that neither the employment provisions nor the public accommodation provisions of the ADA applied to defendants. Because we find that the district court erred in dismissing plaintiffs' ADA claims, we vacate its order dismissing plaintiffs Section 354–A:1 claim and 42 U.S.C. § 1985 and remand these claims to the district court for reconsideration in light of this opinion.

## V.

### CONCLUSION

Because the district court dismissed plaintiffs' complaint without providing notice of its intended dismissal and erred in interpreting the term "employer" under Title I of the ADA and in concluding that defendants were not "public accommodations" under Title III, we hold that the district court erred in dismissing plaintiffs' complaint.

*We vacate the district court's order dismissing plaintiffs' ADA claims and further order that plaintiffs' claims under Section 354–A:1 and 42 U.S.C. § 1985 claim be reviewed and reinstated. We remand for proceedings consistent with this opinion.*