Isabel CORTEZ, Elizabeth Kelley, Luz Marina Velasquez, Pamela Lloyd, Ginger Atwood, and Dare Independent Living Center, individually and for all those similarly situated, Plaintiffs,

v.

NATIONAL BASKETBALL ASSOCIATION, Alamodome, Inc., and San Antonio Spurs, Ltd., Defendants.

Civil Action No. SA–96–CA–0425.

United States District Court,
W.D. Texas,
San Antonio Division.

March 3, 1997.

**114**

James C. Harrington, Peter Hofer, Texas Civil Rights Project, Austin, TX, for plaintiffs.

Barry A. Chasnoff, Akin, Gump, Strauss Et Al., San Antonio, TX, Christopher Wolf, Matthew J. Oppenheim, Proskauer, Rose, Goetz & Mendelsohn, L.L.P., Washington, DC, for National Basketball Ass'n.

Ruben Dario Campos, Wickliff & Hall, P.C., San Antonio, TX, for Alamodome, Inc.

J. Tullos Wells, Kathleen Ann Devine, Wells Pinckney & McHugh, P.C., San Antonio, TX, for San Antonio Spurs, Ltd.

### AMENDED ORDER GRANTING MOTION TO DISMISS BY DEFENDANT NATIONAL BASKETBALL ASSOCIATION AND DENYING PLAINTIFFS' MOTION FOR REHEARING, RECONSIDERATION AND MODIFICATION OF ORDER

BIERY, District Judge.

A case of first impression under the Americans with Disabilities Act (ADA) presents a group of hearing-impaired individuals and DARE Independent Living Center, an advocate on behalf of individuals with disabilities, suing a franchisor—the National Basketball Association (NBA); a franchisee of the NBA—the San Antonio Spurs, and the owner of the venue of NBA contests—Alamodome, Inc. Plaintiffs seek declaratory and injunctive relief contending the ADA requires defendants to accommodate their disabilities. Plaintiffs ask for a permanent injunction requiring the NBA to provide interpretative and captioning services, as a reasonable accommodation, for deaf and heard of hearing individuals who attend NBA games at the Alamodome and other arenas.

Defendant NBA moves to dismiss pursuant to FED.R.CIV.P. 12(b)(6). The NBA contends it is not a proper defendant under Title III of the ADA because it does not own, lease, or operate the Alamodome, and it is undisputed the NBA does not own or lease the Alamodome. Nevertheless, plaintiffs claim the NBA exercises "such profound control over the venue in which *its* teams play that it de facto 'operates' those venues (e.g. the Alamodome) during *its* game" for purposes of the ADA. Plaintiffs and defendant NBA rely on *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996), to support their respective positions.

A motion to dismiss for failure to state a claim is disfavored and rarely granted. *Kaiser Alum. & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Two principles guide the review of the complaint sought to be dismissed. First, all well-pleaded facts in the complaint must be accepted as true, and "the complaint is to be liberally construed in favor of the plaintiff." *Id.* Second, the complaint should not be dismissed, for failure to state a claim, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* Conclusory allegations will not be accepted as true, and a complaint

may be dismissed for failure to state a claim if relief is barred by an affirmative defense, such as limitations. *Id.*

The NBA contends that even assuming all facts alleged in the complaint are true, the complaint must be dismissed because plaintiffs can prove no set of facts to support their claims which would entitle them to relief under Title III of the ADA because the NBA does not own, operate, or lease the Alamodome or any other NBA arena.[1] Plaintiffs contend their Title III claim is valid because the NBA de facto "operates" the venues during its games because it exercises profound control over these venues.

■ Because *Neff* is binding on this Court in the judicial chain of command, the Court finds the motion to dismiss must be granted. Although the NBA opposed the Court's review of materials appended to plaintiffs' response to the motion to dismiss, plaintiffs' filed their amended complaint and attached the same materials, i.e. the NBA Facility Standards (Standards). Therefore, the Court reviewed the Standards in reaching its decision. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996) (in deciding motion to dismiss for failure to state claim, courts must limit inquiry to facts stated in complaint and document either attached to or incorporated in complaint).

■ The Standards show that while the franchisor indeed has significant control over certain aspects of the operations of an NBA franchisee, nothing in the record indicates the NBA is in any materially different position than the American Dairy Queen Corporation in *Neff* in connection with the allegations made by plaintiffs. Here, as in *Neff*, a franchisor can be held liable under Title III if it "operates a place of public accommodation." [2] *Neff*, 58 F.3d at 1066. The relevant inquiry to be made is whether the franchisor "specifically controls the modification of the

franchises to improve their accessibility to the disabled." *Id.*

Plaintiffs maintain the thirty-five page guidelines set forth by the NBA in its NBA Facility Standards, October, 1995, represent the affirmative minimum standards required by the NBA for "NBA arenas," and this is the level and type of control required in *Neff* to establish a Title III claim. The introduction to the NBA Facility Standards provides the following Statement of Purpose:

> The purpose of these standards is to provide NBA teams and other interested parties with minimum standards for planning NBA quality arenas. The standards represent the minimum requirements by the NBA for NBA arenas and should be expanded to meet particular needs.
>
> The NBA Arena Standards should be used to assist NBA teams in conducting design reviews with architects to assure that the minimum parameters defined are properly understood, interpreted, developed and executed.

The document divides the guidelines/requirements into three sections: (1) Team Facilities, (2) Public Relations Facilities, and (3) Arena Facilities. The section concerning team facilities specifies space requirements for the locker area, shower room, drying room, toilet room, team whirlpools, training room, weight room, laundry room, equipment storage, offices, and circulation to the court for home teams that practice and play in the same facility and for home teams that practice and play in separate facilities. The public relations section provides information concerning camera locations, local broadcaster announcer locations, television illumination, television truck parking area, radio equipment, lighting, print press facilities, and photographer's facilities. The guidelines covered under Arena Facilities include requirements for: relative waiting area/players' wives lounge, basketball general storage,

---

1. Title III reads as follows:
   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

2. The term "operates" under the ADA was interpreted in *Neff* to mean, in the context of business operations, "to put or keep in operation," "[t]o control or direct the function of," and "[t]o conduct the affairs of; manage." *Id.* at 1066.

media workroom, media dining/lounge area, PR storage area, games operations storage area, interview room, TV studio, and lighting. There are no requirements or guidelines concerning spectator areas or the use of audio/visual systems such as scoreboards and other products which plaintiffs want modified to accommodate them.

The Fifth Circuit has held that because the non-structural aspects of a franchise agreement did not "relate to the allegedly discriminatory conditions at the San Antonio Stores," it did not provide support for the question of whether American Dairy Queen operated the franchise for purposes of "the ADA's prohibition on discrimination in public accommodations." *Neff*, 58 F.3d at 1067. Similarly, the guidelines relied on by plaintiffs to support the "operates" argument as to the NBA do not relate to plaintiffs' request for interpretative and captioning services for deaf and hard of hearing individuals who attend NBA games.

In plaintiffs' Motion for Rehearing, Reconsideration, and Modification of Order Dismissing Defendant National Basketball Association, plaintiffs contend the Court failed to address two issues:

1. Whether the NBA's exclusively own performances and games, namely, for example, the All–Star Game held in San Antonio at the Alamodome on February 10, 1996, violated the Americans with Disabilities Act because those activities occurred without either captioning on the JumboTron, which the NBA had rented, or providing interpretative services (signing, for example) for sports patrons who are deaf or hearing impaired; and

2. Whether the NBA had responsibility, or shared responsibility with the Spurs, for ADA purposes, with regard to assuring that the Spurs games provided interpretative services for sports patrons who are deaf or hearing impaired, apart from the Jumbotron issue.

The plaintiffs ask this Court to modify its order and dismiss the NBA only as to the issue of captioning the JumboTron during games sponsored by the San Antonio Spurs but not dismiss the NBA with regard to presentation of its All–Star games and other exclusively NBA and non-Spurs events.

Notwithstanding plaintiffs' claims,-the Court did address the second issue, i.e. the NBA's responsibility to insist that Spurs games be conducted with interpreters for people who are deaf or hearing-impaired apart from the Jumbotron issue. *See* page 4 of the Order Granting Motion to Dismiss by Defendant National Basketball Association (docket # 39). The Court concluded on page five of the Order that "the guidelines relied on by plaintiffs to support the 'operates' argument as to the NBA do not relate to plaintiffs' request for *interpretative and captioning services* for deaf and hard of hearing individuals who attend NBA games." (Emphasis added.) Therefore, the motion to dismiss was granted because there is no evidence the NBA owns, leases (or leases to) or operates a place of public accommodation. *See* 42 U.S.C. § 12182(a) (Title III prohibits discrimination by any person who owns, leases (or leases to), or operates a place of public accommodation).

The Court has again reviewed the First Amended Complaint as well as Plaintiff's Response to Defendant National Basketball Association's Motion to Dismiss and finds the central argument proffered by plaintiffs concerning defendant NBA was that the NBA "exercises such profound control over the venues in which *its* teams play that it de facto 'operates' those venues (e.g., the Alamodome) during *its* games." A second argument claimed that besides the physical structures of the venues themselves, the games offered or sold as entertainment to the public by the NBA must comply with Title III of the ADA as well, for there is nothing in the history of Title III that precludes an extension of the statute to the substance of what is being offered.[3] Thus, plaintiffs argue the

3. In support of this proposition, plaintiffs rely in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12 (1st Cir.1994). In *Carparts*, the court re-

manded the case to the district court to "allow plaintiffs the opportunity to adduce further evidence supporting their view that the defendants are places of 'public accommodation' within the

games offered by the NBA to the public as entertainment must be in compliance with the ADA. Plaintiffs claim the NBA is required by the ADA to ensure that any arena in which a NBA team plays be "fully accessible to people who are deaf or hard of hearing" and ask this Court to order the NBA to do so. Plaintiffs state that at a "live NBA basketball game, the commentator's description of the game (or sporting event) and the referees' calls are essential components of the game. The NBA could easily provide this reasonable accommodation at a very modest financial cost, particularly given the great revenues the NBA earns from such games and events." The Court does not disagree with the moral argument. Legally, however, because *Neff* directs that the NBA did not "operate" a place of public accommodation and there were no allegations that the NBA leased or owned the public accommodation at issue, this allegation fails as well.

■ The issue of whether the NBA violated the ADA at its All–Star Game held on February 10, 1996, at the Alamodome because the activities surrounding the game and the game itself occurred without either captioning on the Jumbotron, which the NBA had rented, or providing interpretive services for sports patrons who are deaf or hearing impaired is an issue not previously pleaded

by plaintiffs. The only mention in the first amended complaint is that one of the plaintiffs attended the "NBA Jam" activities at the Henry B. Gonzalez Convention Center during the NBA All–Star weekend held on February 10, 1996. The complaint alleges the NBA "simultaneously sponsored All–Star activities at the Alamodome and broadcasted them to the Convention Center during the 'NBA Jam.' Neither the Convention Center events nor the NBA-sponsored activities at the Alamo-dome [sic] provided captioning and interpretive services, in violation of the ADA. The City of San Antonio **operates** the Convention Center." (Emphasis added.) In its motion to reconsider, plaintiffs now contend "there is no dispute in the record whatsoever that the NBA itself leased and used the Alamodome and the Henry B. Gonzales [sic] Convention Center for its All–Star Game." Having addressed the "operates" argument put forward by the plaintiffs throughout their complaint and relying on the plaintiffs' assertion that the City of San Antonio "operated" the Convention Center, the plaintiffs did not state a cause of action under Title III of the ADA against defendant NBA. Moreover, the first amended complaint contains no allegations that the NBA owned or leased any public accommodation.

■ Additionally, with respect to the one plaintiff alleged to have attended the

---

meaning of Title III of the ADA." *Id.* at 19. The district court had interpreted the term "public accommodation" as "being limited to actual physical structures with definite physical boundaries which a person physically enters for the purpose of utilizing the facilities or obtaining services therein." *Id.*, 37 F.3d at 18. There was no apparent dispute in this case concerning whether the defendant owned, operated, or leased the place of public accommodation as in the instant case.

In addition, authority exists contrary to *Carparts* in cases involving sports organizations instead of insurance businesses. In *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir.1995), plaintiffs bought suit against the National Football League, Inc. and others claiming the "blackout rule" prohibiting live local broadcast of home football games not sold out violated the ADA. The court found none of the defendants fell within any of the twelve "public accommodation" categories defined in 42 U.S.C. § 12181(7) and that "the prohibitions of Title III are restricted to 'places' of public accommodation" thereby disqualifying the National Football League, its member clubs, and

the media defendants. *Id.* at 583. The court also stated plaintiffs' argument that the prohibitions of Title III are not limited solely to "places" of public accommodation contravened the plain language of the statute. *Id.* Relying on the *Stoutenborough* decision, a district court in *Elitt v. U.S.A. Hockey*, 922 F.Supp. 217, 223 (E.D.Mo.1996), found section 12181(7) focused on "places" of public access and "did not list membership organizations under any of the twelve categories." *Elitt*, 922 F.Supp. at 223. Moreover, the court stated that generally, courts have "excluded membership organizations from the definition of public accommodation based on the plain reading of Title II" and this persuasive authority allowed the district court to find the defendants, U.S.A. Hockey, an umbrella organization recognized by the U.S. Olympic Committee which sponsors U.S. amateur hockey affiliates, and Creve Coeur Hockey, an amateur hockey affiliate, did not meet the standard for places of public accommodation. The court also noted the plaintiffs failed to meet the second part of the test: "did defendants own, operate, lease (or lease to) a place of public accommodation." *Id.*

NBA "Jam" activities, it appears she lacks standing to seek injunctive or declaratory relief on this issue because she has not alleged that she intends to return to any NBA "Jam" activities in the future. Although plaintiff Cortez alleges she is an avid basketball fan, has attended Spurs basketball games since 1980, and in 1995 attended three games in the Alamodome, she does not allege she plans to attend future NBA "Jam" activities. A plaintiff seeking injunctive or declaratory relief must show a substantial likelihood of future injury. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (absent sufficient likelihood plaintiff will again be wronged in a similar way, plaintiff not entitled to injunctive relief). The fact Ms. Cortez has attended one NBA "Jam" session in the past is insufficient to show she is likely to return. " '[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564, 112 S.Ct. 2130, 2138, 119 L.Ed.2d 351 (1992). Although the standing issue was not raised or addressed by the parties, standing must be considered by federal courts even if the parties fail to raise it. *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

Accordingly, Plaintiffs' Motion for Rehearing, Reconsideration, and Modification of Order Dismissing Defendant National Basketball Association is DENIED. As amended herein, the motion to dismiss by the NBA is GRANTED.

Having dismissed the defendant NBA from this case, IT IS FURTHER ORDERED that plaintiffs' motion to certify the class (docket # 17) is DENIED IN PART such that the motion to certify a nationwide class concerning all persons who are deaf or hard of hearing and who attend NBA games and events through the country or would do so if the NBA accommodated their disabilities is DENIED. Further, in light of the dismissal of defendant NBA, the motion concerning certification of a nationwide class of persons who attend Spurs games and events through the country and a statewide class for persons who attend events in the Alamodome is DISMISSED without prejudice to refiling and will be considered timely by the Court should the parties wish to continue in their pursuit of a class action.

IT IS FURTHER ORDERED that the remaining parties in this case review the Joint Proposed Revised Scheduling Order deadlines submitted to the Court on December 5, 1996, and file with the Court, no later than **March 14, 1997,** any changes to the December 5 proposal they wish the Court to consider.