Victor **LEBRON–RIOS,**
et al., **Plaintiffs**

v.

The U.S. **MARSHAL SERVICE,**
et al., **Defendants.**

Civil No. 01–2716(JAG).

United States District Court,
D. Puerto Rico.

Feb. 26, 2004.

---

Benito Gutierrez–Diaz, Fajardo, PR, for Plaintiffs.

Fidel A. Sevillano–Del–Rio, San Juan, PR, for Defendants.

Cesar Torres, San Juan, PR, Pro se.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiffs Victor Lebrón–Ríos ("Lebrón–Ríos") and Bernice Aponte–Rodríguez ("Aponte–Rodríguez")(collectively, "plaintiffs") filed a discrimination suit under Title VII, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; the Taft Hartley Act, 29 U.S.C. § 151 *et seq.;* Puerto Rico Law 17, 29 L.P.R.A. § 155; and Puerto Rico's general tort statute, 31 L.P.R.A. § 5141. The named defendants are: the U.S. Marshal Service; M.V.M., Inc. ("MVM"); Luis Torres ("Torres"), his wife, and their conjugal partnership; Luis Comas, his wife, and their conjugal partnership; Cesar Torres, his wife, and their conjugal partnership; United Government Security Officers of America, Local 72 ("Local 72"); and an unnamed Insurance Company.

Local 72 filed a Motion to Dismiss for Insufficiency of Process on January 28, 2002. (Docket Nos. 6, 11.) Plaintiffs did not oppose that motion. On April 3, 2002, the Court granted Local 72's motion to dismiss. (Docket Nos. 16, 17.) On April 5, 2002, plaintiffs filed a motion seeking reconsideration. (Docket No. 18.) On

May 2, 2002, Local 72 filed a second motion to dismiss. (Docket No. 26.)

On January 30, 2002, defendants MVM; Torres, his wife, and their conjugal partnership; Luis Comas, his wife, and their conjugal partnership, filed an unopposed motion to dismiss, *inter alia,* for failure to exhaust administrative remedies. (Docket No. 7.) On April 26, 2002, the Court issued an Opinion and Order granting the motion, and entered partial judgment accordingly. (Docket No. 24.) On May 7, 2002, the Court vacated its partial judgment of April 26, 2002, and afforded plaintiffs an opportunity to file a motion for reconsideration. (Docket No. 29.)

On April 12, 2002, co-defendants the U.S. Marshal Service, the U.S. Department of Justice and César Torres filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). (Docket No. 22.) On June 5, 2002, Plaintiffs filed a Motion for Relief under Fed.R.Civ.P. 60(b) and Late Answer to Defendants' Motion to Dismiss (Docket No. 32)

On July 30, 2002, the Court entered an Opinion and Order granting defendant's motion to dismiss, and granting plaintiffs ten days to specify under which section of the Taft–Harley Act they were bringing suit (Docket No. 34). On that same date, the court entered a Partial Judgment dismissing the plaintiffs' Title VII against all defendants for failure to comply with the Equal Employment Opportunity Commission ("EEOC")requirements, with the exception of plaintiffs' remaining claims under the Taft–Harley Act against defendant Local 72 (Docket No. 35).

On August 12, 2002, Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the First Circuit to review the District Court's partial judgment dismissing the plaintiffs' Title VII claims against all defendants (Docket No. 36).

On August 19, 2002, after the ten-day period given on July 24, 2002 had elapsed, the court entered an Order dismissing plaintiffs' remaining Taft–Harley Act claims (Docket No. 37). On that same date, the Court entered its final judgment dismissing, *with* prejudice the plaintiff's claims against all defendants and closing the case (Docket No. 38).

On appeal, the plaintiffs challenged the district court's "with prejudice" dismissal of their claims. As part of their appellate brief, plaintiffs attached copies of the administrative charges of discrimination that were subsequently filed with the "EEOC" on August 12, 2002. (Docket No. 41)

On August 14, 2003, the First Circuit vacated the district court's judgment and remanded the case for entry of an order of dismissal *without* prejudice as to the MVM defendants, and for a reconsideration of federal defendant's, U.S. Marshal Service motion to dismiss(Docket No. 40).

## FACTUAL BACKGROUND

MVM provides court security services to the U.S. Marshal Service. (Docket No. 1.) Plaintiffs worked for MVM as Court Security Officers ("CSO") with the U.S. Marshal Service for the District of Puerto Rico. (*Id.* at 2–3.) Lebrón–Ríos began working as a CSO around September 23, 1999. Aponte–Rodríguez did so around April 25, 2001. (*Id.*)

Plaintiffs allege that defendants unlawfully harassed them "on account of social condition," deprived them of the equal protection of the laws, and retaliated against them. (*Id.* at 2.) They also contend that Local 72, a union of MVM employees to which plaintiffs belong, violated the Taft Hartley Act by neglecting to represent plaintiffs in this action. (*Id.* at 2, 4–5, 6.)

The Complaint states that defendant Torres, MVM's site supervisor in Puerto

Rico, sexually harassed her. Torres allegedly hired Aponte–Rodríguez because he was "very fun [sic] of her and wanted to go to bed with her." (*Id.* at 3.) At one time, Torres ordered Aponte–Rodríguez to report to his office for a training that was not going to take place; he allegedly wanted just to sit near her. When Aponte–Rodríguez arrived, Torres invited her several times to have breakfast or lunch with him. (*Id.* at 7.) Aponte–Rodríguez protested and walked out of his office. (*Id.* at 8.) Another time, he commented on the color of her lipstick and hair, as well as on her hairdo and make-up. (*Id.* at 7.) On yet another occasion, he touched her neck and hair and commented on its softness. (*Id.* at 8.)

Sometime after April 25, 2001, Aponte–Rodríguez and Lebrón–Ríos began a relationship. They eventually got married.[1] (*See Id.* at 3, 5, 8, 10, 12.) When Torres became aware of the relationship, he became furious and tried to break the couple apart, telling Lebrón–Ríos that he wanted Aponte–Rodríguez to be his mistress. (*Id.* at 8.) Torres openly told other employees he was going to make Lebrón–Ríos pay for interfering with his efforts to make Aponte–Rodríguez his mistress. (*Id.*)

Aponte–Rodríguez orally notified defendant Cesar Torres, MVM's service coordinator, about the sexual harassment incidents with Torres, to no avail. (*Id.* at 10.) Plaintiffs informed MVM and the U.S. Marshal Service of the situation, via fax and certified mail, again to no avail. (*Id.* at 4–5.) MVM, for its part, began its own investigation. (*Id.* at 12.) At some point thereafter, the employer—plaintiff does

not specify whom—began retaliating against plaintiffs. (*Id.*)

Some time thereafter, Lebrón–Ríos's work post and work schedule were changed. (*Id.* at 8.) Lebrón–Ríos requested a transfer to the Virgin Islands, but when Aponte–Rodríguez applied for a transfer to the same destination, his request was denied. (*Id.*) The pressure became so intense for Lebrón–Ríos that he had to be taken to a hospital after a high-blood pressure incident. (*Id.* at 9.)

After leaving the hospital, Lebrón–Ríos and Aponte–Rodríguez stayed home for one day. (*Id.*) Although she had informed the lead CSO, Luis A. Comas ("Comas") of her impending absence, Comas punished her with one day off-duty. (*Id.*) That same day, she was called and ordered not to report back to work. (*Id.* at 12.)

Plaintiffs allege that Comas had been closely supervising their personal whereabouts "in and out of the premises of the employer's assigned duties." (*Id.* at 10.) When Lebrón–Ríos had to miss time off from work because of his medical condition, Comas sought—and obtained—a suspension order to prevent Lebrón–Ríos from returning to work, alleging that Lebrón–Ríos "was medically unfit for duty." (*Id.*) This suspension order, the plaintiffs contend, was "a blunt effort to separate him from his wife who was kept working in her regular schedule and supervised by the same people she has been complaining of sexual harassment." (*Id.*)

Plaintiffs allege that MVM's acts constitute a "constructive lay off." (*Id.*) Moreover, they contend that MVM's tolerance of overt acts of sexual discrimination and

---

1. The Complaint does not specify when the plaintiffs became a couple or when they wed. The only fact specified is that they did not know each other before April 25, 2001, the date when Aponte–Rodríguez was hired. The Complaint does make reference to Aponte–

Rodríguez and Lebrón–Rodríguez as husband and wife at pages 8, 10 and 12. Thus, the Court assumes that their relationship and eventual marriage took place while they were MVM employees.

civil rights violations have caused them emotional distress and health problems. (*Id.* at 6, 12.) They seek damages stemming from the allegedly illegal and discriminatory layoff, as well as back pay, costs, interests and legal fees. (*Id.* at 14.)

## DISCUSSION

### I. *Motion to Dismiss Standard*

 Under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true and draws all reasonable inferences in plaintiff's favor. *Tompkins v. United Healthcare of New England, Inc.,* 203 F.3d 90, 93 (1st Cir.2000); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England Inc.,* 37 F.3d 12, 14 (1st Cir.1994). To survive a motion to dismiss the plaintiffs must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Tompkins,* 203 F.3d at 93. Even when all inferences must be made in plaintiffs' favor, the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The Complaint will be dismissed if under the facts alleged, the Court finds that the plaintiffs will not "prevail on any possible theory." *Berezin v. Regency Sav. Bank,* 234 F.3d 68, 70 (1st Cir.2000); *Tompkins,* 203 F.3d at 93.

### II. *Dismissal "with" or "without" prejudice*

Because the Court dismissed the Title VII claims due to plaintiffs's failure to exhaust administrative remedies, the Court will turn to Fed.R.Civ.P. 41(b). *Triple-S, Inc. v. Pellot,* 41 F.Supp.2d 122, 126 (D.P.R.1999). Rule 41(b) states: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

Title VII states: [A] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred, ... [or if] the person aggrieved ... initially instituted proceedings with a State of local agency with authority to grant or seek relief from such practices ... such charges shall be filed by or on behalf or the person ... within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1994).

 To seek recovery for their Title VII claims, plaintiffs were required to exhaust administrative remedies prior to filing suit. However, under the First Circuit's interpretation of *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), a dismissal for failure to satisfy a statutory precondition to suit, before a limitations period has expired, should not preclude subsequent claims after administrative remedies are properly exhausted. *See, Lebron–Rios v. U.S. Marshal Service,* 341 F.3d 7,13–14(1st Cir. 2003).

 In the case at hand, plaintiffs had 300 days to file their discrimination charges with the "EEOC", rather than the usual 180, because Puerto Rico is a so-called "deferral" jurisdiction. *See,* 42 U.S.C. § 2000e–5(e); *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 n. 4 (1st Cir.1999). Since plaintiffs have timely filed their administrative charges of discrimination (Docket No. 41), the Title VII dismissal is *without* prejudice as to the U.S. Marshal Service, the U.S. Department of Justice, and César Torres. *See, Costello,* 365 U.S. at 286, 81 S.Ct. 534.1

### III. *U.S. Marshal Service Motion to Dismiss*

Defendants MVM, U.S. Marshal Service, the U.S. Department of Justice and César Torres contended that the Court should dismiss the Complaint because plaintiffs failed to exhaust administrative remedies prior to filing suit. (Docket No. 22.)

 Federal defendant, U.S. Marshal Service, however, argued for a dismissal on different grounds than co-defendant MVM, contending that 29 C.F.R § 1614.105(a)(1)(2003) offers them the protection of a forty-five-day limitation period to file an administrative complaint with the "EEOC". This agency regulation requires an administrative "pre-complaint" procedure, where any "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory [ ... ]" 29 C.F.R. § 1614.105(a)(1)(2003).

Plaintiffs did not address this matter in their Response to Defendant's Motion to Dismiss (Docket No. 32), and according to the record before the Court, plaintiffs have not complied with the "pre-complaint" procedure required by 29 C.F.R § 1614.105(a)(2).

However, the administrative procedure above mentioned is not fatal in nature. The provision prescribes for an equitable tolling section that allows the agency, or the Commission, to extend the 45–day time limit if certain circumstances are found, 29 C.F.R § 1614.105(a)(2)(2003). Nevertheless, whether plaintiffs have met the regulation's criteria, or not, is a matter for the agency, not this Court, to decide in the first instance.

Considering defendant's motion to dismiss anew, the Court grants U.S. Marshal Service's motion, *without* prejudice, for the same reasons it granted the other co-defendants' motion.

### CONCLUSION

In light of the foregoing, the Court grants defendants's motion to dismiss *without prejudice* as to MVM, Luis Torres, his wife María Cortes, Luis Comas, and his wife Cristina Pagán. (Docket No. 7.) The Court also grants co-defendants U.S. Marshal Service, the U.S. Department of Justice and Mr. César E. Torres Cabrera's motion to dismiss *without prejudice.* (Docket No. 22.).

IT IS SO ORDERED.