Tate WILLIAMS, Plaintiff-Appellee,

v.

The CITY OF MONTGOMERY, et al., Defendants-Appellants.

No. 82–7370.

United States Court of Appeals, Eleventh Circuit.

May 3, 1984.

Rehearing and Rehearing En Banc Denied Oct. 22, 1984.

Robert C. Black, Montgomery, Ala., for the City of Montgomery, et al., Mayor Emory Folmar and Fire Chief Jim Sutherland.

Robert D. Segall, Montgomery, Ala., for Montgomery City-County Personnel Bd., Green, Reid and Patterson.

Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff-appellee.

## CORRECTED OPINION

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

We determine whether the district court, 550 F.Supp. 662, erred in holding that appellants, the City of Montgomery, its mayor, its fire chief, and the Montgomery City-County Personnel Board and its members, discriminated against Tate Williams, a City fire fighter. We affirm.

■ The City of Montgomery, Alabama's (City) fire department policy required the discharge of any fire fighter convicted of a felony. In August, 1976, two white fire fighters were convicted of a felony, and the fire department discharged them. The employees, however, appealed their dismissals to the Montgomery City-County Personnel Board (Board), and the Board reinstated

them.[1] In November, 1979, Tate Williams, the appellee, a black fire fighter, was convicted of a felony. The fire department dismissed him, and he was not reinstated by the Board. Williams filed a complaint with the Equal Employment Opportunity Commission and the Commission issued him a "Right to Sue" notice. Williams then sued the City, the Board, and other appellants in district court seeking reinstatement to his job and backpay.

Relying on the three-tier analysis articulated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the district court ruled that the City and the Board had discriminated against Williams in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–2000e–17 (West 1981). The court held that the permanent dismissal of Williams, a black fire fighter convicted of a felony, and the dismissal, but reinstatement of the two white fire fighters also convicted of a felony constituted discrimination.

First, the district court held that Williams had fulfilled his burden of establishing a prima facie case of racial discrimination by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Second, the district court concluded that the Board and the City had failed to rebut Williams's prima facie case by showing a "legitimate, nondiscriminatory reason" for Williams's permanent dismissal. *Id.* at 252–55, 101 S.Ct. at 1093–94. *See also United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The district court held that the Board and the City had discriminated against Williams be-

cause of his race and, therefore, reinstated him to his job and awarded him backpay.

The Board and the City contend that the district court erred in finding that they had discriminated against Williams because of his race. Whether the district court ruling is correct is the issue we must decide. The district court correctly applied the *Burdine* analysis to this case and its ruling on the issue of discrimination is not clearly erroneous. *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir.1983); *Harris v. Birmingham Board of Education,* 712 F.2d 1377, 1384 (11th Cir.1983). The City's and the Board's justifications for firing Williams but retaining the two white fire fighters were purely subjective and, therefore, insufficient to establish a "legitimate, nondiscriminatory reason" for firing Williams.[2]

The City and the Board also contend they are not an employer or an employment agency within Title VII and, therefore, are not liable under Title VII. The district court determined that the City is an employing authority within the meaning of Title VII, and the Board is an agent of the City. Therefore, the district court concluded that Title VII applied to the City and the Board.

Title VII defines employer as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C.A. § 2000e(b).[3] This definition is to be accorded a liberal construction. *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir.1980). Because it employs more than fifteen people and is "engaged in an indus-

---

1. The Board handles employment matters for the City and the County of Montgomery.

2. The City and the Board submitted that the white fire fighters' offenses were less serious than Williams's offense and that the white fire fighters received more support from the fire department than did Williams. Besides being subjective, these reasons are irrelevant. The policy requiring the discharge of a fire fighter convicted of a felony was mandatory.

3. Title VII defines a person as "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organization, trustees, trustees in cases under Title XI, or receivers." 42 U.S.C.A. § 2000e(a).

try affecting commerce," the City constitutes an "employer" for purposes of Title VII. *Dumas v. Town of Mt. Vernon, Alabama*, 612 F.2d 974, 979 (5th Cir.1980) (the Town of Mt. Vernon is an industry affecting commerce).

■ "Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship." Schlei & Grossman, *Employment Discrimination Law* at 1002 (2d ed. 1983). Alabama Act No. 2284 grants the Board rights traditionally reserved to the employer:

Section 2(f) To establish, after consultation with the governing body of the county and the governing body of municipalities and the elective officials of the county, coming within the provisions of the Act, a pay plan for all employees in the classified service....

....

Section 5(a) The preparation, installation, revision and maintenance of a position classification plan covering all positions in the competitive service.

(b) the formulation of minimum standards and qualifications for each class of position.

....

(f) the evaluation of employees during the probationary period.

(g) the transfer, promotion, demotion and reinstatement of employees in the competitive service, provided that no person shall be transferred, promoted or demoted without the approval of the officer in whom the power to make the appointment is vested by law.

The above regulations illustrate the Board's power to exercise duties traditionally reserved to the employer: establishing a pay plan, formulating minimum standards for jobs, evaluating employees, and transferring, promoting, or demoting employees. These functions are traditionally

exercised by an employer, but the Board utilizes these powers in the instant case; and, therefore, the Board is an agent of the City for purposes of Title VII.

■ The district court also rejected the Board's contention that it is entitled to either absolute immunity or qualified immunity against the backpay award.

Title VII permits the district court to undertake any affirmative action, including backpay, to halt an employer's discriminatory employment practices. 42 U.S.C.A. § 2000e–5(g). The Fifth Circuit only allows backpay awards against employers in their official capacities. *Clanton v. Orleans Parish School Board*, 649 F.2d 1084, 1099 (5th Cir.1981). The district court adhered to the Fifth Circuit rule by granting the backpay award against the board members only in their official capacities. The Board and the City, however, cite *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), to support their proposition that they are entitled to absolute immunity.

In *Butz*, the Supreme Court held that federal hearing examiners are absolutely immune from suits for damages. *Id.* at 512–13, 98 S.Ct. at 2913–14. The Court based its decision on the similarity between the federal agency process and the judicial process. The board members contend that the Board's process is so similar to a judicial process that they are also entitled to absolute immunity. This contention lacks merit.

The board members are not insulated from political influence. The City, the county, and the judges of the county appoint board members for a limited time. The Board does not record its proceedings unless a party requests it. No judicial review of the Board's decisions exists; therefore, the safeguards present in a federal agency hearing do not exist in the Board's hearings. The board members are not entitled to absolute immunity.[4] More-

---

**4.** Good faith immunity cannot exist when the Board, with full knowledge of the mandatory policy dismissing all fire persons convicted of a

felony, followed the policy in the case of a black, but not in the case of a white, and failed

over, *Butz* involved a claim for personal damages against government officials.

 Finally, the City and Board contend that they are entitled to a jury trial. The district court's decision holding that the City and Board were not entitled to a jury trial is correct. Williams requested back-pay which is an equitable remedy not requiring determination by a jury. The Board and the City, therefore, are not entitled to a jury trial on the Title VII claim. *Harkless v. Swenny Independent School District*, 427 F.2d 319, 323–24 (5th Cir.), *cert. denied*, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124–25 (5th Cir.1969), *vacated on other grounds*, 488 F.2d 714 (5th Cir.1974). For the foregoing reasons, the decision of the district court is affirmed.

**AFFIRMED.**

to proffer legitimate, nondiscriminatory reasons   for such action.