# IN THE SUPREME COURT OF CALIFORNIA

KRISTINA RAINES et al.,
Plaintiffs and Appellants,

v.

U.S. HEALTHWORKS MEDICAL GROUP et al.,
Defendants and Respondents.

S273630

Ninth Circuit
21-55229

Southern District of California
3:19-cv-01539-DMS-DEB

August 21, 2023

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

RAINES v. U.S. HEALTHWORKS MEDICAL GROUP

S273630

Opinion of the Court by Jenkins, J.

This case requires us to clarify the meaning of the term "employer" as used in the California Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.). Subject to specified exceptions, section 12940 of the FEHA makes it an "unlawful employment practice" for "any employer" "to make any medical or psychological inquiry of an applicant" (§ 12940, subd. (e)(1)), and section 12926, subdivision (d) states that, for purposes of the FEHA, the term " '[e]mployer' *includes* any person regularly employing five or more persons, *or any person acting as an agent of an employer, directly or indirectly . . . .*" (Italics added.) The italicized language might be interpreted as merely incorporating the common law principle of respondeat superior, or some variant thereof, into the FEHA's statutory liability. Were we to adopt this interpretation of the statutory language, liability for a violation of the statute would reside with the employer, not with the employer's agent.[2] Conversely, the italicized language could also be reasonably interpreted to mean that an employer's agents are subject to all the obligations and liabilities that the FEHA imposes on the employer itself.

---

[1]   All further undesignated statutory references are to the Government Code.

[2]   When we use the term "employer" without any qualification, we use it in the ordinary common law sense, not in a sense specially defined by a statute such as the FEHA.

1

Recognizing this ambiguity, the United States Court of Appeals for the Ninth Circuit asked this court to answer the following question: "Does California's Fair Employment and Housing Act, which defines 'employer' to include 'any person acting as an agent of an employer,' Cal. Gov't Code § 12926(d), permit a business entity acting as an agent of an employer to be held directly liable for employment discrimination?" (*Raines v. U.S. Healthworks Medical Group* (9th Cir. 2022) 28 F.4th 968, 969.) We conclude that an employer's business entity agents can be held directly liable under the FEHA for employment discrimination in appropriate circumstances when the business-entity agent has at least five employees and carries out FEHA-regulated activities on behalf of an employer.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Kristina Raines and Darrick Figg, on behalf of themselves and a putative class, allege that they received offers of employment that were conditioned on successful completion of preemployment medical screenings to be conducted by defendant U.S. Healthworks Medical Group (USHW), who was acting as an agent of plaintiffs' prospective employers. Plaintiffs assert that USHW and its affiliates and successors (collectively, defendants) are "the nation's and California's largest providers of occupational health." Plaintiffs claim that as part of its medical screenings, USHW required job applicants to complete a written health history questionnaire that included numerous health-related questions having no bearing on the applicant's ability to perform job-related functions. According to plaintiffs, these questions covered details of the applicant's health history including "whether the applicant has and/or has ever had: 1) venereal disease; 2) painful or irregular vaginal discharge or pain; 3) problems with menstrual periods; 4) irregular

menstrual period; 5); penile discharge, prostate problems, genital pain or masses; 6) cancer; 7) mental illness; 8) HIV; 9) permanent disabilities; 10) painful/frequent urination; 11) hair loss; 12) hemorrhoids; 13) diarrhea; 14) black stool; 15) constipation; 16) tumors; 17) organ transplant; 18) stroke; or 19) a history of tobacco or alcohol use." In addition, the questionnaire asked whether the job applicant was pregnant, sought information regarding medications taken, and required the job applicant to disclose prior job-related injuries and illnesses.

Plaintiff Kristina Raines received an offer from Front Porch Communities and Services (Front Porch) for a position as a food service aide, but the offer was conditioned on her passing the preemployment medical screening conducted by USHW. Raines alleges that she responded to most of the questions on the written questionnaire, but she declined to answer the question about the date of her last menstrual period. She alleges that the exam was then terminated, and Front Porch revoked its offer of employment.

Plaintiff Darrick Figg received an offer from the San Ramon Valley Fire Protection District to serve as a member of the volunteer communication reserve, but his offer, too, was conditioned on his passing the preemployment medical screening conducted by USHW. Figg alleges that he answered all the questions, successfully passed the screening, and was hired for the position.

Raines filed a state court action against Front Porch and USHW. After she later filed a first amended complaint that added additional defendants and class claims, defendants removed the action to federal court. (See 28 U.S.C. § 1332(d).)

There, Raines filed a second amended complaint, adding Figg as a named plaintiff, dismissing Front Porch as a defendant (pursuant to a settlement), and adding additional defendants. Defendants successfully moved to dismiss (see Fed. Rules Civ.Proc., rule 12(b)(6), 28 U.S.C.), and plaintiffs then filed a third amended complaint. That complaint, which is the operative complaint, alleges claims under the FEHA, the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and the common law right of privacy.

Defendants again moved to dismiss, and the district court granted the motion with prejudice as to all claims except plaintiffs' unfair competition law claim. In dismissing plaintiffs' FEHA claim, the district court concluded that the FEHA does not impose liability on the agents of a plaintiff's employer.

As to plaintiffs' unfair competition law claim, the district court had granted dismissal *without* prejudice, but plaintiffs requested an order dismissing the claim with prejudice, and the district court granted their request. Plaintiffs then appealed the dismissal of their other claims. After holding oral argument, the United States Court of Appeals for the Ninth Circuit asked this court to answer the question quoted on page 2, *ante*.

## II. DISCUSSION

At issue in this case is the proper interpretation of the definition of " '[e]mployer' " in section 12926, subdivision (d). In part II.A., we discuss our prior decisions interpreting that provision and conclude that they do not resolve the question the Ninth Circuit has put before us. In part II.B., we examine the text of section 12926, subdivision (d); its legislative history; the interpretation federal courts have given to federal

4

antidiscrimination laws that use similar language; and public policy considerations. Our examination of these indicators of legislative intent leads us to conclude that the agent-inclusive language of section 12926, subdivision (d) permits a business-entity agent of an employer to be held directly liable for violation of the FEHA when it carries out FEHA-regulated activities on behalf of an employer. Lastly, in part II.C., we consider and reject defendants' arguments in favor of a contrary interpretation.

## A. The Relevance of *Reno v. Baird* and *Jones v. Lodge at Torrey Pines*

As noted on page 1, *ante*, section 12926, subdivision (d) provides that, for purposes of the FEHA, the term " '[e]mployer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ." We have explored the meaning of this provision in two cases: *Reno v. Baird* (1998) 18 Cal.4th 640 (*Reno*) and *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158 (*Jones*).

The issue in *Reno* was whether an employer's supervisory employees could be held personally liable under the FEHA for their acts of employment discrimination. The plaintiff in *Reno* alleged discrimination and wrongful discharge, and she sued, among others, the individual supervisors who, she alleged, were directly responsible for the alleged discriminatory acts. She argued that the individual defendants, as agents of her employers, could be held personally liable under the plain meaning of section 12926, subdivision (d), which makes "any person acting as an agent of an employer" into an " '[e]mployer' " for purposes of the FEHA. (See *Reno*, *supra*, 18 Cal.4th at pp. 643–644, 647.) We concluded that the agent-inclusive language

of section 12926, subdivision (d) does not impose liability on *all* agents, including individual employees of the same employer, and adopting that interpretation of section 12926, subdivision (d) would be inconsistent with the provision's express exemption for employers with fewer than five employees. (*Reno*, at pp. 647, 650–651.) In so concluding, we noted " 'the incongruity that would exist if small employers [with fewer than five employees] were exempt from liability while individual nonemployer supervisors were at risk of personal liability.' " (*Id.* at p. 651, quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 71.) We added: " 'The Legislature clearly intended to protect employers of less than five from the burdens of litigating discrimination claims. [Citation.] . . . [I]t is "inconceivable" that the Legislature simultaneously intended to subject individual nonemployers to the burdens of litigating such claims.' " (*Reno*, at p. 651, quoting *Janken v. GM Hughes Electronics*, at p. 72.)

We further explained that imposing personal liability on supervisory employees would severely damage the exercise of supervisory judgment because supervisors would fear that their routine workplace decisions might lead to personal financial ruin. Among other things, this possibility would cause supervisors to have interests in conflict with those of their employers. (*Reno, supra*, 18 Cal.4th at pp. 651–653.) In addition, we noted that corporate decisions are often made collectively, and therefore assessing individual blame in a particular case of discrimination might be difficult. Individual employees might even find themselves pitted against one another, trying to protect their own interests. (*Id.* at p. 662.) Finally, we commented that defending even an unmeritorious lawsuit can be expensive, and supervisors should not have to face that cost every time they make a routine personnel decision.

(*Id*. at p. 663.) For these reasons, we concluded in *Reno* that, notwithstanding the agent-inclusive language of section 12926, subdivision (d), "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (*Reno*, at p. 663.)

In *Reno*, however, we declined to address the question presented in this case: whether section 12926, subdivision (d) permits direct liability for *other types of agents*, such as business entities acting as independent contractors. (See *Reno*, *supra*, 18 Cal.4th at p. 658.)[3]

In *Jones*, we extended *Reno*'s holding to a claim of retaliation in violation of section 12940, subdivision (h), holding that supervisorial employees are not liable under the FEHA for their retaliatory acts. (*Jones*, *supra*, 42 Cal.4th at pp. 1173–1174.) We reached that conclusion despite the retaliation provision's broad wording, which refers not merely to the "employer" but to "any employer, labor organization, employment agency, or *person*." (§ 12940, subd. (h), italics added.) Our reasoning closely tracked our analysis in *Reno*. Noting, among other things, the FEHA's exemption for employers having fewer than five employees (*Jones*, at p. 1165), we reasoned that it would be incongruous to hold a supervisor liable for retaliation while exempting small employers from such liability (*id*. at pp. 1167–1168). We said: "All of the[] reasons [we gave in *Reno*] for not imposing individual liability for

_____

[3]     Because *Reno*, *supra*, 18 Cal.4th 640 expressly reserved the question we are now deciding, we cannot draw any strong conclusion from the Legislature's failure to amend the FEHA's definition of employer during the more than two decades since we decided that case.

discrimination — supervisors can avoid [doing acts of] harassment but cannot avoid [making] personnel decisions, it is incongruous to exempt small employers but to hold individual nonemployers liable, sound policy favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision — apply equally to retaliation." (*Id.* at p. 1167.) We also noted that section 12940, subdivision (j), which governs harassment, expressly imposes liability on the employees who are responsible for the harassment. It provides (as it did when *Jones* was decided): "An employee of an entity subject to this [harassment] subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . ." (§ 12940, subd. (j)(3).) That provision, in our view, made it clear that the Legislature used express language in section 12940 when it wanted to impose personal liability on employees, and therefore the absence of such language in the retaliation provision (§ 12940, subd. (h)) supported the inference that the Legislature did not intend to impose personal liability on employees for their acts of retaliation. (*Jones*, at p. 1162–1163.)[4]

---

[4]     In deciding *Reno*, we did not consider subdivision (j)(3) of section 12940 because the text of that subdivision was first added to section 12940 after *Reno* was decided. (See Stats. 2000, ch. 1047, § 1, p. 7690.) We did, however, note that the term "employer" is specially defined for purposes of the FEHA's harassment provision, omitting the exemption for employers having fewer than five employees. (See *Reno*, *supra*, 18 Cal.4th at pp. 645, 650.) That and other provisions of section 12940 made clear that section 12940 treats harassment differently

Although we directly address in part II.B., *post*, whether section 12926, subdivision (d) permits FEHA liability for business-entity agents of employers, it is useful here to highlight the ways in which the considerations that motivated our decisions in *Reno* and *Jones* are either absent or much diminished in a case, like this one, involving a business-entity agent with five or more employees.[5] At least in cases involving a business-entity agent with five or more employees, the incongruity of imposing liability on the agent while exempting employers with fewer than five employees does not exist. In addition, such a business-entity agent will likely perform a narrowly defined task for multiple clients over the course of several years. Thus, it more likely can bear the cost of legal counsel to ensure that its policies and methods meet applicable statutory and common law standards. As to the potential for conflicts of interest between the agent and the employer, it is perhaps true that a business-entity agent's interest in minimizing its own liability might sometimes conflict with the interests of the employer that has hired it. However, a business-entity agent is more likely than an employee agent to have

---

from discrimination. (*Reno*, at pp. 645, 650.) We also noted that the conduct that might lead to a harassment claim is avoidable, but a supervisor cannot avoid making personnel decisions despite the risk that such decisions could lead to a claim of discrimination. (*Id*. at pp. 645–646.)

[5] As noted, plaintiffs allege that USHW and its affiliates and successors (defendants here) are large business enterprises operating on a national scale, and our analysis takes that allegation into consideration. The question of whether, and to what extent, the analysis we apply here would apply to a business-entity with fewer than five employees is not before us. Accordingly, we express no view on that question.

comparable bargaining power to the employer, enabling it to negotiate such differences at the time that it initiates or renews its business relationship with the employer. Indeed, such negotiations might include the question of indemnification regarding any potential FEHA liability that might arise. Finally, the role of a business-entity agent is often formally defined by the terms of its contract with the employer. Therefore, its fault, if any, for the employer's actions can be easily determined.

In short, in a case involving a business-entity agent, the competing statutory mandates that we needed to harmonize in *Reno* and *Jones* do not come into play, and the policy arguments that informed our analysis in those cases apply, if at all, with much less force. Hence, *Reno* and *Jones* do not control the outcome here. With that in mind, we turn to address the Ninth Circuit's question.

## B. Section 12926, Subdivision (d)

When as here we are interpreting a statutory provision, " ' " [o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. . . . If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase,

sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*Brennon B. v. Superior Ct.* (2022) 13 Cal.5th 662, 673.) Consistent with this approach, we begin our analysis by examining the plain meaning of section 12926, subdivision (d). We conclude that the provision's most natural reading imposes FEHA liability on the business-entity agents of employers, but the provision is not without some ambiguity. Therefore, we examine the relevant legislative history of the provision, federal cases interpreting federal antidiscrimination laws that use similar language, and public policy considerations. These indicators of legislative intent serve to confirm our conclusion that section 12926, subdivision (d) can impose direct liability on the business-entity agents of employers for their FEHA-regulated activities.

### *1. Plain Meaning*

Section 12926, subdivision (d) states that, for purposes of the FEHA, the term " '[e]mployer' includes . . . any person acting as an agent of an employer, directly or indirectly . . . ." The most natural reading of this language is that a "person acting as an agent of an employer" is *itself* an employer for purposes of the FEHA. Indeed, this interpretation accounts for and reasonably construes the word "includes" (§ 12926, subd. (d)), a word that, in this context, can only be intended to broaden the scope of the term "employer." In addition, because "partnerships, associations, corporations, [and] limited liability companies" come within the FEHA's definition of the word " '[p]erson' " (§ 12925, subd. (d)), it follows that a business-entity agent of a

FEHA plaintiff's employer is, for purposes of the FEHA, an employer of the plaintiff.[6]

Defendants, however, point out that we reached a different conclusion in *Reno, supra,* 18 Cal.4th 640, holding that the agent-inclusive language of section 12926, subdivision (d) does *not* extend FEHA liability to agents. Defendants' argument misconstrues the scope of our holding in *Reno.* In *Reno,* we did not categorically reject the natural reading of section 12926, subdivision (d), a reading that supports the conclusion here that the FEHA can impose liability on certain business-entity agents. Rather, employing the principle that the provisions of a statute are to be interpreted in light of their context, we found it inconceivable that the Legislature simultaneously exempted from FEHA liability employers of fewer than five employees while imposing FEHA liability on supervisorial employees. (*Reno,* at p. 651.)

The incongruity we identified in *Reno* is simply not present in a case like this one. (See p. 9, *ante.*) But as *Reno* implicitly recognized, the natural reading of section 12926, subdivision (d) that we have described is not the only possible interpretation of the provision. (See *Reno, supra,* 18 Cal.4th at p. 658 [expressing "no opinion on whether the 'agent' language merely incorporates respondeat superior principles"].) Therefore, we will examine other indicators of legislative intent in order to confirm the correct interpretation of the statutory language.

---

[6]    Section 12926, subdivision (d) creates an express exception for "religious association[s] or corporation[s] not organized for private profit."

## 2. *Legislative History*

The FEHA was enacted in 1980 (Stats. 1980, ch. 992, § 4, p. 3140 et seq.), combining into one act the Fair Employment Practices Act (FEPA) (Lab. Code, former § 1410 et seq.; addressing employment discrimination) and the Rumford Fair Housing Act (Health & Saf. Code, former § 35720 et seq.; addressing housing discrimination). The FEHA's definition of employer came directly from the FEPA, and therefore its wording dates back to the FEPA's enactment in 1959. At that time, the FEPA defined employer as follows: " 'Employer,' except as herein provided, *includes* any person regularly employing five or more persons, *or any person acting as an agent of an employer, directly or indirectly*; the State or any political or civil subdivision thereof and cities." (Lab. Code, former § 1413, subd. (d), as enacted by Stats. 1959, ch. 121, § 1, p. 2000, italics added.) As relevant to our inquiry concerning the liability of an agent, the italicized part of the FEPA definition of employer is identical to the FEHA's present definition of employer (§ 12926, subd. (d)), and it is, of course, the part of the definition we must construe in this case.

Of significance to our analysis, the FEPA's 1959 definition of employer took its agent-inclusive language from the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.), a federal law that assures fair labor practices and workplace democracy. At that time, and still today, the NLRA provided that "[t]he term 'employer' *includes any person acting as an agent of an employer, directly or indirectly*." (Labor Management Relations (Taft-Hartley) Act of 1947, Pub.L. No. 80-101 (June 23, 1947) 61 Stat. 136, 137, codified at 29 U.S.C. § 152(2), italics added.) That the FEPA adopted the NLRA's agent-inclusive language informs our analysis because, as amicus curiae Legal Aid at Work points

out, the National Labor Relations Board (NLRB) had interpreted the NLRA's definition of employer to impose employer status on certain employer agents. (See *Hudson Pulp & Paper Corp.* (1958) 121 NLRB 1446, 1450–1451; *Hugh J. Baker & Co.* (1955) 112 NLRB 828, 838; *The Hearst Corp.* (1952) 101 NLRB 643, 648, fn. 3; *Western Ass'n of Engineers, Architects and Surveyors* (1952) 101 NLRB 64, 64; *J.D. Jewell, Inc.* (1952) 99 NLRB 61, 64, fn. 15; *Southland Manufacturing Co.* (1951) 94 NLRB 813, 829; *Jackson Daily News* (1950) 90 NLRB 565, 565; *Association of Motion Picture Producers, Inc.* (1949) 85 NLRB 902, 903; see also p. 26, fn. 10, *post*.) The Legislature did not make an express reference to these NLRB decisions when, in 1959, it adopted the NLRA's agent-inclusive language into the FEPA, but the decisions are consistent with the conclusion that the Legislature intended the FEPA's agent-inclusive language to permit direct liability for the agents of an employer in appropriate circumstances. (Cf. *Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 353 [presumption that the Legislature is aware of long-standing administrative interpretation of a law that the Legislature is reenacting]; *Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918, 922–923 [same].) In addition, there is a very strong presumption that when, in 1980, our Legislature adopted that language into the FEHA, the language retained the same meaning. (See *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235 [interpreting the FEHA consistently with the way the FEPA had previously been interpreted]; *Buchwald v. Katz* (1972) 8 Cal.3d 493, 502 [" 'where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the

construction' "]; see also *Union Oil Associates v. Johnson* (1935) 2 Cal.2d 727, 734–735.)

Thus, the legislative history of the agent-inclusive language of section 12926, subdivision (d) supports an interpretation of that language as permitting direct FEHA liability on the business-entity agents of an employer.[7]

*3. Federal Antidiscrimination Laws*

Also instructive regarding the definition of employer in section 12926, subdivision (d) are various federal antidiscrimination laws that define employer in similar terms. Because these federal laws were enacted *after* our Legislature enacted the definition of employer that now appears in section 12926, subdivision (d), they are not, strictly speaking, part of the legislative history of the latter provision, but the parties rely on them by way of analogy. We, like the parties, find these decisions helpful in interpreting the reach of the statutory language at issue. State courts, when interpreting state law, commonly find federal court interpretations of federal laws that use similar language to be persuasive authority. (See *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 109; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984; *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 930, fn. 8; *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040; *Johnson v. City of Loma Linda* (2000) 24

---

[7] By contrast, had the Legislature intended the agent-inclusive language merely to incorporate respondeat superior into the FEHA, it could have done so explicitly, as it has done in other provisions. (See, e.g., Civ. Code, §§ 2334 ["A principal is bound by acts of his agent . . . ."], 2338 ["a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency"].)

Cal.4th 61, 74; *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 498.) More specifically, " '[i]n interpreting California's FEHA, California courts often look for guidance to decisions construing federal antidiscrimination laws, including title VII of the federal Civil Rights Act of 1964.' " (*Williams v. Chino Valley Independent Fire Dist.*, at p. 109, quoting *Chavez v. City of Los Angeles*, at p. 984; see *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 278; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 463; *State Dept. of Health Services v. Superior Court*, at p. 1040; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 129–130 (plur. opn. of George, C. J.); *id.* at p. 150, fn. 3 (conc. opn. of Werdegar, J.); *Reno, supra*, 18 Cal.4th at p. 647; *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1245–1246.)

Three federal antidiscrimination laws have definitions of employer that are similar to the definition that appears in section 12926, subdivision (d). Both title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.) and the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) define " 'employer' " as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , and any agent of such a person." (42 U.S.C. § 2000e(b); see 42 U.S.C. § 12111(5)(A).) Using nearly identical language, with a minor difference in the minimum number of employees required to come within the ambit of the statute, the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 621 et seq.) defines " 'employer' " as "a person engaged in an industry affecting commerce who has twenty or more employees" and "any agent of such a person." (29 U.S.C. § 630(b).) Like the FEHA, these three federal laws define employer in a way that includes an employer's agents.

16

Therefore, all three federal laws raise a similar issue to the one now before us: Does the agent-inclusive language in these definitions mean that plaintiffs may sue the agents of their employers, subjecting the agents to the same liability that the law imposes on the employers?

Federal circuit court decisions have arrived at different conclusions on that question. Several courts have concluded that the agent-inclusive language merely incorporates respondeat superior liability into the relevant statutory scheme. (See, e.g., *Birkbeck v. Marvel Lighting Corp.* (4th Cir. 1994) 30 F.3d 507, 510 ["we read [the agent language in the ADEA's definition of 'employer'] as an unremarkable expression of respondeat superior — that discriminatory personnel actions taken by an employer's agent may create liability for the employer"]; *Grant v. Lone Star Co.* (5th Cir. 1994) 21 F.3d 649, 652 ["the purpose of the 'agent' provision in [42 U.S.C.] § 2000e(b) was to incorporate *respondeat superior* liability into title VII"]; *Miller v. Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 587 [" '[t]he obvious purpose of [the agent language of Title VII's definition of employer] was to incorporate respondeat superior liability into the statute' "].) Notably, however, these decisions all involved the question whether the particular federal law at issue imposed personal liability on the individual *employee* agents of an employer; that is, they addressed the question we decided in *Reno, supra*, 18 Cal.4th 640. Moreover, these decisions embrace the point we made in *Reno* that imposing personal liability on supervisorial employees would be incongruous in light of the exemption these federal laws create for small employers. (See *Birkbeck v. Marvel Lighting Corp.*, at p. 510; *Grant v. Lone Star Co.*, at p. 652; *Miller v. Maxwell's Intern. Inc.*, at p. 587.) As discussed above (see p. 9, *ante*), there

is no such incongruity here. Therefore, these decisions are of little assistance in resolving the precise question we confront here — whether the agent-inclusive language of the relevant definition of employer imposes liability on a third party business-entity agent as opposed to an individual employee agent.

Yet other federal decisions have addressed variants of the issue we now confront and have interpreted the agent-inclusive language to subject at least some business-entity agents to direct liability. These courts have often relied on the high court's decision in *Los Angeles Dept. of Water & Power v. Manhart* (1978) 435 U.S. 702 (*Manhart*), which involved a class action challenging the Los Angeles Department of Water and Power's (Department) practice of demanding higher retirement contributions from female employees than from male employees. This practice was actuarially justified based on the longer life-expectancy of women, but the high court concluded that it violated Title VII. The court limited the scope of its decision, however, saying: "Nothing in our holding implies that it would be unlawful for an employer to set aside equal retirement contributions for each employee and let each retiree purchase the largest benefit which his or her accumulated contributions could command in the open market." (*Manhart*, at pp. 717–718.) After noting that limitation, the high court commented in a footnote: "We do not suggest, of course, that an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells. Title VII applies to 'any agent' of a covered employer . . . . In this case, for example, the Department could not deny that the administrative board [that oversaw its pension plan] was its agent after it successfully argued that the two were so inseparable that both shared the city's immunity from suit

under 42 U.S.C. § 1983." (*Manhart*, at p. 718, fn. 33, citation omitted.) This footnote is hardly free from ambiguity. It could be read to say that the employer would bear respondeat superior liability for the discriminatory programs of the "corporate shells" (*ibid*.) that acted as its agents, or it could be read to say that the corporate shells would themselves bear employer liability.

In *Spirt v. Teachers Ins. & Annuity Ass'n.* (2d Cir. 1982) 691 F.2d 1054 (*Spirt*), the Second Circuit Court of Appeals read the *Manhart* footnote in the latter manner, although it did so in a case involving an agent that was an independent business entity, not a corporate shell of the employer. *Spirt* concluded that an insurance corporation and investment fund that acted as an agent to a university, providing retirement benefits to the university's employees, came within the agent-inclusive language of Title VII's definition of employer and therefore was liable under Title VII to the university's employees. The Second Circuit said: "It is clear that plaintiff's contract for retirement benefits is not with [her employer], but with TIAA–CREF, an independent insurer. Plaintiff clearly is not an employee of TIAA–CREF in any commonly understood sense. However, it is generally recognized that 'the term "employer," as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an "employer" of an aggrieved individual as that term has generally been defined at common law.' " (*Spirt*, at p. 1063, quoting *Vanguard Justice Society, Inc. v. Hughes* (D.Md. 1979) 471 F.Supp. 670, 696.) The Second Circuit then discussed the high court's comment in *Manhart* that " 'Title VII applies to "any agent" of a covered employer,' " (*Spirt*, at p. 1063, quoting

*Manhart, supra*, 435 U.S. at p. 718, fn. 33), and it noted that many courts "have held *Manhart* applicable to pension plans run by third-party insurers." (*Spirt*, at p. 1063.) The Second Circuit therefore concluded that TIAA–CREF, the pension plan administrator for the plaintiff's employer, was an "employer" of the plaintiff for purposes of Title VII. (*Spirt*, at p. 1063.)

The First Circuit Court of Appeals, in *Carparts Distri. Ctr. v. Automotive Wholesaler's* (1st Cir. 1994) 37 F.3d 12 (*Carparts*), extended the reasoning of *Spirt, supra*, 691 F.2d 1054 to an ADA case. The plaintiffs in *Carparts* were a wholesale distributor of automotive parts and its sole shareholder and president, Ronald S. The defendants were the Automotive Wholesaler's Association of New England and its administering trust. Since 1977, the parts distributor had participated in a self-funded medical reimbursement plan offered by the defendants. But in 1990, the defendants capped benefits for AIDS-related illnesses at $25,000, knowing that Ronald S. was HIV positive. In response to the cap, the plaintiffs sued the defendants, alleging discrimination based on disability in violation of the ADA. The federal district court dismissed the claims, holding that the ADA did not apply because, among other things, neither defendant was an "employer" of Ronald S. within the meaning of the ADA. The First Circuit vacated the district court's dismissal order and remanded. (*Carparts*, at p. 21.) Because, as noted, the definitions of employer in the ADA and Title VII are, for all relevant purposes, the same, the First Circuit looked at how courts had interpreted Title VII's definition, focusing in particular on *Spirt, supra*, 691 F.2d 1054. (See *Carparts*, at pp. 16–18.) The First Circuit conceded that defendants were not the employers of Ronald S. in the ordinary sense of the term, but it nonetheless concluded that there were three valid theories

according to which the defendants might be liable to Ronald S. under the ADA. (*Carparts*, at p. 16.) Two of those theories are noteworthy here. "First, defendants would be 'employers' [of Ronald S.] if they functioned as [his] 'employer' with respect to his employee health care coverage, that is, if they exercised control over an important aspect of his employment." (*Id.* at p. 17.) "Second, even if the defendants did not have authority to determine the level of [Ronald S.'s] benefits, and even if Carparts retained the right to control the manner in which the Plan administered these benefits, defendants would still be rendered 'employers' of [Ronald S.] *if defendants are 'agents' of a 'covered entity,'* who act on behalf of the entity in the matter of providing and administering employee health benefits." (*Ibid.*, italics added.) Thus, the court construed the agent-inclusive language of the ADA's definition of employer as imposing direct ADA liability on an employer's agents under certain circumstances. Having announced several theories by which the defendants might be liable under the ADA, the court concluded that further development of the record was necessary to determine whether any of the theories applied. (*Carparts*, at p. 18.)[8]

---

[8] The third theory the *Carparts* court discussed is inapplicable here. The court explained that in some Title VII cases the existence of an employee-employer relationship between the plaintiff and the defendant has been held to be unnecessary for purposes of imposing liability. In these cases, entities that engaged in an industry affecting commerce and had the requisite number of employees were held liable for their discriminatory acts toward individuals who made no claim of being employees of the offending entity. (See *Sibley Memorial Hospital v. Wilson* (D.C. Cir. 1973) 488 F.2d 1338, 1341; see also

The Eleventh Circuit Court of Appeals, in *Williams v. City of Montgomery* (11th Cir. 1984) 742 F.2d 586 (*Williams*), applied the agent-inclusive language of Title VII's definition of employer to a municipal entity, concluding, as the court did in *Spirt, supra*, 691 F.2d 1054, that an institutional agent of an employer can be directly liable under Title VII to the employer's employees. In *Williams*, the court upheld a determination that the Montgomery City-County Personnel Board (the Board) had discriminated against the plaintiff based on race when it terminated his employment with the City of Montgomery. The plaintiff was an employee of the city, not of the Board, but the Board was the city's agent and was responsible for the city's employment decisions, and therefore, the Eleventh Circuit concluded, it came within Title VII's definition of employer and was directly liable. (*Williams*, at pp. 588–589.) After quoting the agent-inclusive language of Title VII's employer definition (*Williams*, at p. 588), the court said: " 'Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an "employer" *by virtue of the agency relationship*.' [Citation.] . . . [¶] . . . [¶]   The [provisions of Alabama law]

_____

*Association of Mexican-American Educators v. State of California* (9th Cir. 2000) 231 F.3d 572, 581; *Christopher v. Stouder Memorial Hospital* (6th Cir. 1991) 936 F.2d 870, 875; *Pardazi v. Cullman Medical Center* (11th Cir. 1988) 838 F.2d 1155, 1156; *Doe on Behalf of Doe v. St. Joseph's Hosp.* (7th Cir. 1986) 788 F.2d 411, 422; *Gomez v. Alexian Brothers Hosp.* (9th Cir. 1983) 698 F.2d 1019, 1021.) The Ninth Circuit's question to this court is not concerned with an employer's potential liability under the FEHA to *non*employees. Rather, it is expressly concerned with "liab[ility] for *employment* discrimination." (*Raines v. U.S. Healthworks Medical Group, supra*, 28 F.4th at p. 969, italics added.)

illustrate the Board's power to exercise duties traditionally reserved to the employer:  establishing a pay plan, formulating minimum standards for jobs, evaluating employees, and transferring, promoting, or demoting employees.    These functions are traditionally exercised by an employer, but the Board utilizes these powers in the instant case; and, therefore, *the Board is an agent of the City for purposes of Title VII.*" (*Williams*, at p. 589, italics added.)  On that basis, the Eleventh Circuit affirmed the district court's judgment holding the Board liable for the plaintiff's discriminatory termination.  (*Id*. at p. 590.)

Finally, in *DeVito v. Chicago Park Dist.* (7th Cir. 1996) 83 F.3d 878 (*DeVito*), the Seventh Circuit Court of Appeals extended the holding of *Williams*, *supra*, 742 F.2d 586 to an ADA case.   In *DeVito*, a park district employee alleged he was terminated in violation of the ADA.   At issue, among other things, was whether the park district's personnel board came within the ADA's definition of employer.   In holding that it might, the Seventh Circuit expressly relied on the definition's agent-inclusive language.   The court, however, recognized an exception for agents that were small entities with few employees.   The court said:  "The plain language of the ADA defines employer as 'a person engaged' in an industry affecting commerce who has 25 or more employees[**9**] . . . and any agent of such person.'  [Citation.]  Because (as discussed previously) the [personnel] Board is an agent of the Park District, it seems at

---

**9**    The minimum number of employees set forth in the ADA's employer definition dropped to 15 as of July 26, 1994, but the 25-employee minimum applied in *DeVito*.   (See 42 U.S.C. § 12111(5)(A).)

first glance that the Board should be subject to suit. But . . . [a]gents are liable under the ADA only if they 'otherwise meet the statutory definition of [an] "employer." ' [Citation.] For example, an agent of an employer is not liable under the ADA unless it has the requisite number of employees and is engaged in an industry affecting commerce." (*DeVito*, at p. 882, fn. omitted.) Having reached that conclusion, the Seventh Circuit remanded the case for the district court to conduct the requisite factfinding to determine whether the park district's personnel board qualified as the plaintiff's "employer" for purposes of the ADA.

These federal cases hold that under federal civil rights law, aggrieved employees may sue, not only their employer, but also the institutional agents of their employer if those agents engage in an industry affecting commerce and are responsible for the civil rights violation at issue. The latter condition, that the agent be responsible for the violation, is analyzed in different ways, but the federal courts have generally focused on whether the agent exercised an administrative function traditionally exercised by the employer. For example, in *Spirt*, the court considered whether the agent exercised a gatekeeper role that would normally be exercised by the employer and, by serving in that role, violated the plaintiff's rights. Specifically, the court held that it was appropriate to impose direct liability on an agent where, as was true in *Spirt*, the agent " 'significantly affects access . . . to employment opportunities.' " (*Spirt*, *supra*, 691 F.2d at p. 1063.)

The court in *Carparts*, *supra*, 37 F.3d 12 reached a similar conclusion, noting that the agents in that case affected access to benefits in a similar way as the agent in *Spirt*. The court said: "Just as 'delegation of responsibility for employee benefits

cannot insulate a discriminatory [retirement benefits] plan from attack under Title VII,' *Spirt*, 691 F.2d at 1063, neither can it insulate a discriminatory health benefits plan under Title I of the ADA." (*Carparts*, *supra*, 37 F.3d at pp. 17–18.)

Similarly, in *Williams*, the court considered whether the agent performed functions, typical of the employer, that might give rise to a civil rights violation. The court noted that the personnel board that was acting as the employer's agent in *Williams* exercised " 'control of some of the employer's traditional rights, such as hiring or firing.' " (*Williams*, *supra*, 742 F.2d at p. 589.) The court further noted the agent's "power to exercise duties traditionally reserved to the employer: establishing a pay plan, formulating minimum standards for jobs, evaluating employees, and transferring, promoting, or demoting employees." (*Ibid*.) Finally, the court commented that "[t]hese functions are traditionally exercised by an employer, but the [employer's agent] utilizes these powers in the instant case . . . ." (*Ibid*.) On that ground, the court held that the agent bore direct liability for violating the plaintiff's civil rights. (*Ibid*.)

The holding of *DeVito, supra*, 83 F.3d 878, which likewise involved a personnel board of a municipal employer, is to the same effect. In reaching its holding, the court did not emphasize the personnel board's exercise of employer functions, but the facts of the case make clear that the personnel board had authority over the termination of the municipal employer's employees. (*Id*. at p. 879.)

These cases establish that an employer's agent can, under certain circumstances, appropriately bear direct liability under the federal antidiscrimination laws. As noted on pages 15 to 16,

*ante*, we have long held that " '[i]n interpreting California's FEHA, California courts often look for guidance to decisions construing federal antidiscrimination laws, including title VII of the federal Civil Rights Act of 1964.' " (*Williams v. Chino Valley Independent Fire Dist.*, *supra*, 61 Cal.4th at p. 109.) The federal court decisions in *Spirt*, *supra*, 691 F.2d 1054, *Carparts*, *supra*, 37 F.3d 12, *Williams*, *supra*, 742 F.2d 586, and *DeVito*, *supra*, 83 F.3d 878 support the conclusion that a business-entity agent of an employer can fall within the FEHA's definition of employer, and it may be directly liable for FEHA violations, in appropriate situations. Although the question presented in this case does not require that we go further and attempt to identify the specific scenarios in which a business-entity agent will be subject to liability under the FEHA, we recognize as a necessary minimum that, consistent with the FEHA's language and purpose, a business-entity agent can bear direct FEHA liability only when it carries out FEHA-regulated activities on behalf of an employer.[10]

---

[10] This interpretation is supported by the NLRB decisions cited on page 14, *ante*. In those decisions, the NLRB imposed liability on business-entity agents only when the agent performed some NLRA-regulated activity on behalf of the employer and violated the NLRA in performing that activity. (See, e.g., *Hudson Pulp & Paper Corp.*, *supra*, 121 NLRB at pp. 1450–1451 [business entity designated to act as employer's agent with respect to "the hiring, discharging, and supervision of its driver employees" liable as "employer" for NLRA violations committed in that capacity]; *Association of Motion Picture Producers, Inc.*, *supra*, 85 NLRB at p. 903 [association that "acted as agent of its members in negotiating labor contracts" liable as "employer" for NLRA violations committed in that capacity].)

*4. Public Policy*

This reading of section 12926, subdivision (d) also finds support in the public policy underlying the enactment of the FEHA. If a business entity contracts with an employer to provide services that will affect that employer's employees, and if, in providing those services, the business-entity agent violates FEHA's antidiscrimination policies, causing injury to the employer's employees, it is consistent with sound public policy to treat the business entity as an employer of the injured employees for purposes of applying the FEHA. This interpretation imposes FEHA liability not only on the employer but also extends it to the entity that is most directly responsible for the FEHA violation. Moreover, when, as is often the case, the business-entity agent has expertise in its field and has contracted with multiple employers to provide its expert service, this interpretation extends FEHA liability to the entity that is in the best position to implement industry-wide policies that will avoid FEHA violations.

In addition, reading the FEHA to authorize direct liability on an employer's business-entity agents furthers the statutory mandate that the FEHA "be construed liberally" in furtherance of its remedial purposes (§ 12993, subd. (a)), including the purpose of "provid[ing] effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons" (§ 12920.5). Moreover, the interpretation we advance today will not impose liability on individuals who might face " 'financial ruin for themselves and their families' " were they held directly liable under the FEHA. (*Reno, supra*, 18 Cal.4th at p. 653.)

Therefore, we conclude that legislative history, analogous federal court decisions, and legislative policy considerations all support the natural reading of section 12926, subdivision (d) advanced here, which permits business-entity agents to be held directly liable for FEHA violations in appropriate circumstances.

### C. Defendants' Arguments

Defendants argue that a business-entity agent of an employer should not be held directly liable under the FEHA because, according to the law of agency, an agent acts under the control of its principal, and therefore the principal is the entity primarily responsible for any inadequate performance by the agent. Defendants concede that an agent may, at times, be held directly liable to a third party that it has injured, but defendants contend that liability may be imposed only if the agent has breached a duty it owes to that third party, and such duty must exist independent of the agency relationship.

At the outset, it is important to note that defendants' argument relies heavily on the common law of agency. Here, however, we are interpreting the scope of statutory language referencing agent liability, and so the common law of agency is not determinative.[11]

In any event, defendants' arguments assume a degree of employer control of the agent that has not yet been shown here. Plaintiffs allege that the degree of employer control over USHW's medical screening questionnaire varied from employer

---

[11]    Because the issue here is statutory, we need not address the extent to which an agent may be held liable at common law for its misfeasance in performing work done on behalf of its principal. Accordingly, we express no view on the subject.

to employer,[12] and although the district court noted, in the context of finding the complaint's agency allegations sufficient, that plaintiffs alleged employer control over USHW, the precise extent of that control is unclear.[13]  More importantly, the basis of the district court's dismissal of the FEHA cause of action was not that USHW lacked responsibility under the FEHA because, as a factual matter, it acted without any independent control over the content of the medical screening questionnaire.  Rather, the basis of the district court's ruling was that the FEHA's definition of employer simply does not impose direct liability on an agent regardless of how much control the agent has.  Accordingly, to answer the Ninth Circuit's question of whether a business-entity agent may ever be held directly liable under the FEHA, we need not express a view on the significance, if any, of employer control over the acts of the agent that gave rise to the alleged FEHA violation.

Defendants also assert that an employer's obligations under the FEHA may not be delegated to an agent; it follows, according to defendants, that an employer's agent cannot be held liable under the FEHA.  It is true that an employer's obligations under the FEHA may not be delegated, thus freeing

---

[12]    The operative complaint asserts that the "[e]mployers *often* required that USHW use the employers' own physical examination form, rather than USHW's medical form, in conducting the physical examination component of the pre-placement exam." (Italics added.)

[13]    The operative complaint alleges that the "employers . . . delegated to Defendants employment decisionmaking authority" and that based on that delegation of authority, "Defendants . . . approved of, authorized and ratified the use of the Health History Questionnaire(s) and Impermissible Non-Job-Related Questions."

the employer of liability. However, the question we decide here is not whether an employer may delegate its FEHA obligations to its business-entity agents, but whether, under the language of the FEHA, the business-entity agents of an employer can be liable for violations of *their own* FEHA obligations. We have concluded that, by statute, business-entity agents can be considered "employers" for purposes of FEHA liability, and as such, they are independently liable for violations of the FEHA. Stated another way, a business-entity agent's obligation to comply with FEHA and its consequent liability for FEHA violations results from the entity's own engagement in FEHA-regulated activities on the employer's behalf. Thus, a rule holding that the business-entity agents of an employer can be held liable for FEHA violations neither delegates the employer's FEHA obligations nor abrogates the employer's FEHA liability. Nor will it lead to a double recovery for the plaintiff, as defendants argue; rather, it merely increases the number of defendants that might share liability for the plaintiff's damages.

Last, as discussed (see pp. 9–10, *ante*), this is not a situation like the one we considered in *Reno*, where imposing FEHA liability on supervisorial employees might lead to a conflict between the supervisorial employee's duty to implement their employer's policies and the supervisorial employee's self-interest in avoiding FEHA liability. At least in a case like this one, involving a business-entity agent that is alleged to be a large enterprise with more than five employees, the agent and the employer are more likely to have comparable bargaining power, and the agent can use that bargaining power to avoid contractual obligations that will force it to violate the FEHA. That fact makes the situation of a large business-entity agent fundamentally unlike that of an employee agent.

For these reasons, we reject defendants' arguments. Simply put, we are not persuaded by defendants' arguments that business-entity agents with at least five employees are categorically exempt from liability for FEHA violations under section 12926, subdivision (d).

## III. CONCLUSION

We answer the Ninth Circuit's question as follows: The California Fair Employment and Housing Act, which defines "employer" to "include[]" "any person acting as an agent of an employer" (§ 12926, subd. (d)), permits a business entity acting as an agent of an employer to be held directly liable as an employer for employment discrimination in violation of the FEHA in appropriate circumstances when the business-entity agent has at least five employees and carries out FEHA-regulated activities on behalf of an employer. We do not decide the significance, if any, of employer control over the act(s) of the agent that gave rise to the FEHA violation, and we also do not decide whether our conclusion extends to business-entity agents that have fewer than five employees. We base our conclusion on our interpretation of the FEHA's definition of employer(§ 12926, subd. (d)); we express no view of the scope of a business entity agent's possible liability under the FEHA's aider and abettor provision (§ 12940, subd. (i)).

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Raines v. U.S. Healthworks Medical Group

---

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**  XX on request by 9th Circuit (Cal. Rules of Court, rule 8.548)
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S273630
**Date Filed:**  August 21, 2023

---

**Court:**
**County:**
**Judge:**

---

**Counsel:**

Phillips, Erlewine, Given & Carlin, R. Scott Erlewine, Brian S. Conlon and Kyle P. O'Malley for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Matthew Rodriquez, Chief Assistant Attorney General, Michael L. Newman, Assistant Attorney General, Srividya Panchalam, Francisco V. Balderrama and Christopher Paul Kailani Medeiros, Deputy Attorneys General, for the Attorney General of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Alexis Alvarez; and Sachin S. Pandya for AIDS Legal Referral Panel, Bet Tzedek, California Employment Lawyers Association, Civil Rights Education and Enforcement Center, Disability Rights Advocates, Disability Rights California, Disability Rights Education and Defense Fund, Disability Rights Legal Center, Impact Fund and Legal Aid at Work as Amici Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Raymond A. Cardozo, Kathryn M. Bayes; Ogletree, Deakins, Nash, Smoak & Stewart, Tim L. Johnson and Cameron O. Flynn for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

R. Scott Erlewine
Phillips, Erlewine, Given & Carlin LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

Raymond A. Cardozo
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
(415) 659-5990